IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

NYEISHA DIXON, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF ZYIAH SMITH, DECEASED                    PLAINTIFFS

v.                                              CIVIL ACTION NO. 4:25-CV-6-SA-DAS

MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES, et al.                                              DEFENDANTS

ORDER AND MEMORANDUM OPINION

On December 16, 2024, Nyeisha Dixon, individually and on behalf of the wrongful death beneficiaries of Zyiah Smith, initiated this action by filing her Complaint [2] asserting federal and state law claims in the Washington County Circuit Court against Mississippi Department of Human Services ("MDHS") and John Does 1-25. On January 17, 2025, MDHS timely removed the case to this Court. The Third Amended Complaint [29] is now the operative complaint and includes Mississippi Department of Child Protective Services ("MDCPS") as a defendant.[1]

Now before the Court is MDCPS' Motion to Dismiss for Lack of Jurisdiction [35]. The Motion [35] has been fully briefed and is ripe for review. Having considered the parties' filings, as well as applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*

Zyiah Smith ("Zyiah"), now deceased, was born on May 22, 2019 to her mother, Nyeisha Dixon ("Dixon"), and father, Leonardo Smith ("Smith"). In February 2022, Dixon contracted

---

[1] Dixon initially named only MDHS as a defendant. In the First Amended Complaint [16], she added the City of Greenville, Mississippi as a defendant. She then added Washington County, Mississippi in the Second Amended Complaint [17]. Finally, the Third Amended Complaint [29] names all three of those entities, as well as MDCPS.

COVID-19 and, while she was sick, sent Zyiah to live with Smith. According to the Third Amended Complaint [29], once Zyiah was in Smith's custody, Smith refused to let Dixon see her. The Court notes that the factual allegations contained in the Third Amended Complaint [29] following Smith's custody of Zyiah are, at times, difficult to follow, but the Court has attempted to piece together the relevant facts to the greatest extent possible.

At some point after Smith took custody of Zyiah, Dixon called the "MDHS hotline" to seek help and obtain a welfare check on Zyiah. [29] at p. 3.[2] Dixon also went to the Washington County MDHS office and spoke with "Summer LNU" who allegedly told her that Zyiah was in Chicago, Illinois with her grandfather and that, as a result, MDHS could not get involved. *Id.*

Dixon alleges that she continued to go to the Washington County MDHS office to "make reports" and, on one occasion, spoke to Viedale Washington, the Regional Director of MDHS for the Division of Family and Child Services, to report abuse and neglect and request a welfare check on Zyiah. *Id.* Dixon also filed a Missing Person Report with the Greenville Police Department. Dixon's mother, Pamela Hall ("Hall"), also made similar reports and requests to MDHS, MDCPS, the Greenville Police Department, and the Washington County Sheriff's Office.

Sometime in 2023, Dixon and Hall received information that Zyiah was with Catricia Hardy ("Hardy") in Greenville, Mississippi.[3] Later in 2023, Dixon received information that Zyiah was locked in an upstairs closet at Hardy's residence. After receiving this information, Dixon and Hall "went to the MDHS and MDCPS office to make another report and to request another welfare check but were turned away by employees claiming their concerns were unsubstantiated." [29] at p. 4.[4] At some point, Smith made a separate report to the Greenville Police Department.

---

[2] As the Court will discuss *infra*, MDCPS, not MDHS, operates the referenced "hotline."
[3] The Third Amended Complaint [29] does not specify Hardy's familial relation, if any, to Zyiah.
[4] For context, Dixon, in her Response Memorandum [42], explains that "MDCPS… is separate from the MDHS office." [42] at p. 10.

On January 7, 2024, Officers Fredrick Benford and Dechara Williams were dispatched to Hardy's residence to perform a welfare check on Zyiah.[5] Upon arrival, the Officers were met by Smith who told them Hardy was at a different address and claimed he had not seen Zyiah since September 2023 when he left her with Hardy. Officers then conducted a search of the house and found Zyiah locked inside a bedroom closet deceased.

On December 16, 2024, Dixon, individually and on behalf of Zyiah's wrongful death beneficiaries, filed her Complaint [2] alleging claims under state and federal law. On January 16, 2025, MDHS timely removed the Complaint [2] to this Court. On April 17, 2025, Dixon filed her Third Amended Complaint [29]. As noted previously, this iteration of the complaint was the first time that MDCPS was named as a defendant. Through the present Motion [35], MDCPS seeks dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

*Legal Standard*

A Rule 12(b)(1) motion allows a party to challenge the court's subject matter jurisdiction. "[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit. Corp.*, 613 F. 2d 507, 511 (5th Cir. 1980)) (citations omitted). In ruling on a Rule 12(b)(1) motion to dismiss, the Court can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (internal quotation marks and citation omitted). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v.*

---

[5] While not clearly alleged in the Third Amended Complaint [29], the Court assumes that the referenced officers are from the Greenville Police Department.

3

*United States*, 26 F.3d 592, 594 (5th Cir. 1994). The district court should grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane v. Haliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

*Analysis and Discussion*

Dixon asserts numerous claims against MDCPS under state and federal law. As to the federal claims, Dixon appears to bring three separate claims pursuant to 42 U.S.C. § 1983: (1) violation of the Fourteenth Amendment right to be free from neglect, (2) violation of mandatory reporting requirements under CAPTA, and (3) supervisory liability based on failure to train and supervise its employees with mandated reporting and investigation requirements.[6] As to the state law claims, Dixons alleges negligence, negligent training and supervision, and negligence per se.

The Court will address the federal claims before turning to the state law claims.

*A.      Federal Claims*

The Court first considers MDCPS' articulated bases for dismissal of the federal claims asserted against it. MDCPS argues, *inter alia*, that Dixon's federal claims should be dismissed because it is immune under the Eleventh Amendment, not a "person" under § 1983, and not subject to supervisory liability under § 1983. For her part, Dixon argues that MDCPS waived sovereign immunity and that she has otherwise stated valid claims against MDCPS pursuant to the other alleged theories.

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[6] While not clearly alleged in her Third Amended Complaint [29], Dixon in her Response Memorandum [42] argues that MDCPS is liable under § 1983 for *Monell* claims. As the Court will explain *infra*, MDCPS cannot be held liable for a *Monell* claim.

4

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Under the Eleventh Amendment, the state, its agencies, and its officers, are immune from lawsuits in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A state's sovereign immunity extends to so-called arms of the state, entities which are effectively the state itself because the state is the real, substantial party in interest to the lawsuit." *Fleming v. Mississippi Dep't of Child Protective Servs.*, 2026 WL 73478, at *2 (S.D. Miss. Jan. 9, 2026) (quoting *Hopkins v. Wayside Sch.*, 2024 WL 3738478, at *4 (5th Cir. 2024)) (citation omitted). It is undisputed that MDCPS is an "arm" of the State of Mississippi entitled to Eleventh Amendment Immunity. *Perry v. Mississippi Dep't of Child Protective Servs.*, 2025 WL 818288, at *3 (N.D. Miss. Mar. 14, 2025).

Here, Dixon contends that MDCPS' sovereign immunity has been waived by virtue of MDHS' removal of the case to federal court.

At the outset, the Court notes that the Eleventh Amendment provides two types of immunity for states—immunity from suit and immunity from liability. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005). The Fifth Circuit has explained that "the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so." *Id.* Further, "the Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect its enjoyment of the other." *Id.* at 253. Simply stated, "a state may waive its immunity from suit through removal and simultaneously retain its immunity from liability." *Necaise v. May*, 700 F. Supp. 3d 469, 479-80 (S.D. Miss. Oct. 31, 2023) (citing *Zeng v. Texas Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 207 (5th Cir. 2020)).

Therefore, even if MDCPS waived its right to raise an immunity from suit defense by virtue of MDHS' removal, it did not necessarily lose the right to raise the immunity from liability defense. *Id.* at 480. This concept is illustrated by an analogous case from the District Court for the Southern District of Mississippi. *Id.* at 479-81.

In *Necaise*, the plaintiff filed a complaint against the Mississippi Department of Revenue ("MDOR"), an arm of the state, alleging claims under federal and state law, including pursuant to § 1983. *Id.* at 475-76. MDOR then removed the suit to federal court before asserting an immunity defense under the Eleventh Amendment. *Id.* The district court held that "while [MDOR] may have waived [its] right to raise the immunity from suit defense, [it] did not necessarily lose the right to raise the immunity from *liability* defense." *Id.* at 479 (emphasis added). The court then explained that "[t]he question [] is whether Mississippi law retains or disclaims [the state's] sovereign immunity from liability with respect to the federal and state constitutional claims at issue." *Id.* at 480.

Finding *Necaise* instructive, the Court now turns to the applicable Mississippi law. As noted previously, Dixon brings all her federal claims pursuant to § 1983. It is well settled that "the State of Mississippi has *not* waived its sovereign immunity from liability in suits arising under §§ 1983, 1985, or 1986." *Delaney v. Mississippi Dep't of Public Safety*, 2013 WL 286365, at *4 (S.D. Miss. Jan. 24, 2013) (emphasis added); *Johnson v. Mississippi Dep't. of Public Safety*, 2015 WL 5313563, at *3 n.1 (N.D. Miss. Sept. 11, 2015) ("Section 1983… does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.").[7] "On the contrary, the Mississippi Tort Claims Act (MTCA), the State's only explicit waiver of

---

[7] Additionally, as argued by MDCPS, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *see also Williams v. Berry*, 977 F. Supp. 2d 621, 628 (S.D. Miss. July 19, 2013) (holding that MDHS is not a "person" under § 1983 and is immune from liability under the Eleventh Amendment).

sovereign immunity, expressly preserves the State's Eleventh Amendment immunity." *Delaney*, 2013 WL 286365, at *3 (citing MISS. CODE ANN. § 11-46-3(1)) (providing that "the 'state' and its 'political subdivisions,' ... are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity")); *see also* MISS. CODE ANN. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

The law is clear that Mississippi has not waived sovereign immunity from liability with respect to § 1983 claims, and Dixon has failed to show otherwise. *Necaise*, 700 F. Supp. 3d at 480.[8]

In line with these findings, Dixon's federal claims are DISMISSED *without prejudice* because MDCPS is immune from liability pursuant to the sovereign immunity doctrine. *Patel v. United States Dept. of Agric.*, 2017 WL 11697929, at *2 (S.D. Miss. Sept. 1, 2017) ("Claims barred by Eleventh Amendment immunity and dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) are necessarily dismissed without prejudice.").

---

[8] As to Dixon's remaining claims brought pursuant to § 1983, in addition to being barred by sovereign immunity, the same fail on other grounds. For example, Dixon argues MDCPS is responsible under § 1983 for *Monell* claims. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Dixon's reliance on *Monell* is incorrect. The Fifth Circuit has held that *Monell*, which concerned a suit against a *municipality*, in "no way suggests that state agencies are subject to suit in federal court." *Mayes v. Issac*, 294 Fed. Appx. 137, 139 (5th Cir. 2008). Dixon additionally argues that MDCPS is subject to § 1983 liability for failure to comply with the mandatory reporting requirements pursuant to the Child Abuse Prevention and Treatment Act ("CAPTA"). Since CAPTA provides no private right of action and claims thereunder can only be asserted pursuant to § 1983, it fails for the same reason. *Brasher v. Louisiana Judiciary Comm'n*, 2025 WL 559721, at *5 (W.D. La. Jan. 14, 2025) (citing 42 U.S.C.A. §§ 5101 et seq.).

B.     *State Law Claims*

Next, the Court turns to Dixon's state law claims. Because MDCPS raises a statute of limitations argument as to all state law claims, the Court will address them together. The Mississippi Tort Claims Act ("MTCA") "provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit." *Spencer v. City of Jackson*, 511 F. Supp. 2d 671, 673 (S.D. Miss. July 31, 2007) (quoting *Simpson v. City of Pickens*, 761 So.2d 855, 858 (Miss. 2000)). It requires plaintiffs first to exhaust procedures within the governmental entity and then to provide notice to that entity's chief executive officer at least 90 days before filing suit. *Johnson v. Miller*, 98 F.4th 580, 584 (5th Cir. 2024) (citing MISS. CODE ANN. § 11-46-11(1)-(2)). The required pre-suit notice must be in writing and delivered in person or by certified United States mail. MISS. CODE ANN. § 11-46-11(2)(b).

Important to this case, the MTCA sets the statute of limitations at "one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after." *Id.* at § 11-46-11(3)(a). "[T]he limitations period for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows or, *in the exercise of reasonable diligence*, should know of both the injury and the act or omission which caused it." *Caves v. Yarbrough*, 991 So.2d 142, 155 (Miss. 2008) (emphasis added). The latter part of this inquiry reflects the MTCA's adoption of the common law "discovery rule," under which the statute of limitations is tolled until an injury, and the cause of the injury, are discoverable with reasonable diligence. *Evergreen Apartments, LLC v. City of Tupelo*, 2016 WL 3180769, at *7 (N.D. Miss. June 6, 2016) (citing *Caves*, 991 So.2d at 154). The plaintiff carries the burden to invoke the MTCA's discovery rule. *Id.* (citing *Stark v. Greenwood Leflore Hosp.*, 39 So.3d 901, 904 (Miss. Ct. App. 2009)).

8

Here, the parties dispute when the statute of limitations began to run against MDCPS. For its part, MDCPS argues that it began on January 7, 2024, which is the day Zyiah's body was found. And, since it was not properly served the notice of claim until January 13, 2025, MDCPS argues that Dixon's state law claims are time-barred. On the other hand, Dixon argues that the statute of limitations did not begin to run against MDCPS until January 6, 2025, because, until then, "[she] had no knowledge that MDCPS was involved in this matter." [42] at p. 9. Thus, if the statute of limitations is tolled by virtue of the discovery rule, then Dixon's state law claims against MDCPS may proceed. If not, they are barred and must be dismissed.

The crux of the dispute is whether in the exercise of reasonable diligence Dixon should have known that MDCPS could be liable. Dixon states that she only became aware of MDCPS' involvement on January 6, 2025 when attorney Ashley Lane, "[who] purported to be an attorney for MDHS[,]" informed her of MDCPS' potential liability.[9] MDCPS argues that Dixon did not exercise reasonable diligence.

In short, the Court finds that Dixon has offered no evidence that she exercised reasonable diligence. *See Evergreen Apartments,* 2016 WL 3180769 at *8. Nor does she allege MDCPS engaged in acts to conceal its potential liability. *See Stark*, 39 So.3d at 904. On the contrary, Dixon's own Third Amended Complaint [29] demonstrates that she failed to exercise reasonable diligence. There, Dixon alleges, sometime "[l]ater in 2023," that "Dixon and Hall went to the MDHS office and to the *MDCPS office* to make another report." [29] at p. 4 (emphasis added). Meaning, by Dixon's own allegation in the Third Amended Complaint [29], she reported the incident to MDCPS and was therefore on actual notice of MDCPS' involvement. Dixon's present

---

[9] The Court notes that attorney Ashley Lane is counsel for MDCPS, not MDHS. Notwithstanding, the fact that Ashley Lane notified Dixon of MDCPS's potential liability does not factor in the Court's analysis for reasons explained below.

9

assertion—that she was unaware of MDCPS' potential involvement—when *she herself* alleged that she went to the MDCPS office to make a report during the search for Zyiah is disingenuous.

Despite those allegations in the Third Amended Complaint [29] that she went to the MDCPS office, Dixon, in her Response Memorandum [42], argues that "[she was] wholly unaware of any involvement by MDCPS, because, [she] nor Hall went to the MDCPS office in Greenville to make complaints, which is separate from the MDHS office." [42] at p. 10. The Response Memorandum [42] again states "Dixon asserts she nor Hall ever made complaints about Zyiah to [MDCPS]." [42] at p. 11. Again, this is simply contrary to the factual allegations set forth in the Third Amended Complaint [29]. To reiterate the applicable standard, the Court must accept as true all well-pleaded allegations set forth in the operative complaint. *Truman*, 26 F.3d at 594. Therefore, the Court, at this stage, must accept as true the factual allegation that Dixon and Hall went to the MDCPS office. She was consequently on actual notice of MDCPS' potential involvement at that time, and therefore her state law claims are time-barred for that reason alone. Dixon's attempt to modify her factual allegations through her Response Memorandum [42] seems to be an attempt to circumvent MDCPS' statute of limitations defense and is unavailing.[10]

Irrespective of this finding, the record shows that Dixon did not otherwise exercise reasonable diligence. In her Third Amended Complaint [29], Dixon states that she called the "MDHS hotline" to seek a welfare check of Zyiah. [29] at p. 3. However, according to the statute, "[t]he department of Child Protection Services [MDCPS] shall maintain a statewide incoming wide-area telephone service or similar service for the purpose of receiving reports of suspected

---

[10] Dixon, in her Response Memorandum [42], also argues that "[w]ith the affidavits of Dixon and Hall, along with the emails that confirm when Ms. Lane contacted the undersigned, dismissal of Dixon's state claims against MDCPS is inappropriate." [42] at p. 11. Despite Dixon's argument in this regard, the affidavits make no representation that Dixon and/or Hall did not go to the MDCPS office. Additionally, the email correspondence to which Dixon refers is seemingly only an internal email correspondence between plaintiff's counsel. This argument is unpersuasive.

cases of child abuse[.]" MISS. CODE ANN. § 43-21-353(3). She also alleges MDHS failed to follow the statutory mandatory reporting requirements. [29] at p. 7 (citing MISS. CODE ANN. § 43-21-353). Again, the statute names the "Department of Child Protection Services [MDCPS]" as the entity with the mandatory reporting requirement. *Id.* at § 43-21-353(1). A cursory review of § 43-21-353 would have put Dixon on notice of MDCPS' potential involvement.[11]

In sum, the Court finds that Dixon has failed to carry her burden to show the applicability of the discovery rule in this case. The record reflects that Dixon had actual notice of MDCPS' potential liability or, alternatively, that through reasonable diligence she should have known of its potential liability. As such, the statute of limitations did not toll, and Dixon's state law claims are therefore time-barred. Dixon's state law claims against MDCPS are hereby DISMISSED *with prejudice*.

<em>Conclusion</em>

For the reasons set forth above, MDCPS' Motion to Dismiss for Lack of Jurisdiction [35] is GRANTED. The Clerk of Court is directed to terminate MDCPS as a defendant on the docket.

SO ORDERED, this the 24th day of March, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] Dixon's argument is seemingly that the statute of limitations only begins to run when her attorney has actual knowledge of an entity's potential liability. Notably, she cites no authority for that proposition. The Court rejects it.